in any court of a state, not pending in any court of a state, against an officer, etc., a petition for removal may be filed, etc. The same words are substantially used in all of the removal statutes from the act of 1789 to the present time. Again, the section also provides that where suit is commenced in a state court by summons, petition for capias, etc., the clerk of the circuit court shall issue a writ of certiorari, or habeas corpus, to be served upon the clerk of such state court, requiring him to send copies, etc. These expressions of the act seem to refer alone to the cases pending in the state court in which they were commenced. Any other construction would in effect make this court an appellate court from the court of common pleas, making the state district court a mere highway to reach this court by way of appeal. To reach this court parties could try the case in common pleas, and on defeat appeal to the district court, and while the case was there pending, file the petition here for removal and then re-try the case in this court. But it is claimed by counsel for the defendant, Trimble, that two terms of the circuit court having been held after the filing of the transcript and pleadings, and before the motion to dismiss was filed, it was too late to do it then. If the complainants had appeared and pleaded in the case after such filing, it might be regarded as a waiver of the right to make the motion, and an admission of the jurisdiction of this court. No new pleadings were, however, filed by the complainants before their motion to dismiss, and this objection is not, therefore, well taken.

The motion to dismiss is sustained, and order entered accordingly.

## Case No. 1,856a.

### In re BRICK.

District Court, D. New Jersey. Nov. 29, 1880.

[See 4 Fed. 804.]

BRICK, The (LANE v.). See Case No. 8,048.

BRICKER (UNITED STATES v.). See Case No. 14,642.

BRICKFORD (UNITED STATES v.). See Case No. 14,643.

BRIDDLE (SCULL v.). See Cases Nos. 12,-569 and 12,570.

## Case No. 1,857.

### BRIDGE et al. v. BROWN et al.

[Holmes, 53; Merw. Pat. Inv. 113.] [1]

Circuit Court, D. Massachusetts. April Term, 1871.

PATENTS—REISSUE—CONCLUSIVENESS—EXTENT OF CLAIM.

1. The grant of a reissue of a patent is not conclusive upon the question whether or not it is for the same invention as the original patent.

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission. Merw. Pat. Inv. 113, contains only a partial report.]

2. A patent for a new and useful process, which clearly describes the process and the construction of some machinery or apparatus by which it can be carried out, covers all machinery or apparatus which will accomplish the same purpose in substantially the same way.

3. The reissue patent, dated March 28, 1865, granted S. W. Pingree for an improved process for extracting tan bark, held invalid for want of novelty.

Bill in equity [by Abel E. Bridge and others against Rufus H. Brown and others] for an injunction to restrain alleged infringement of reissued letters-patent [No. 1,922], for an improved process for extracting tan bark, granted S. W. Pingree, March 28, 1865; and for an account of profits. The original patent [No. 41,782], was granted to Pingree, March 1, 1864. The complainants were the owners of the reissue for the New England states, by assignment. The defendants contended that the reissue was invalid, because it was not for the same invention as the original patent, and because the patentee was not the original and first inventor of the patented process. [Bill dismissed.]

Thomas L. Wakefield, for complainants.

George L. Roberts, for defendants.

SHEPLEY, Circuit Judge. The reissue patent of S. W. Pingree, dated March 28, 1865, for a new and improved process for extracting tan bark, described his invention as follows:—"This invention is principally based on the use of steam in making extracts from tan bark, and it consists in treating tan bark after it has been ground: first, with weak tan liquor, or water, whereby it is swelled; and, after the first liquor has been drained off, with steam, which penetrates the bark and prepares it for a second percolation with cold water or weak tan liquor, and a second treatment with steam, in such a manner that, by the application of the first lotion, the bark is prepared for the action of the steam, and by the application of the steam the soluble parts contained in the bark are softened, and brought in the best condition to give up their tannin to the second lotion of cold water or weak tan liquor."

This portion of the description seems sufficiently plain and unambiguous. The process described is: First, a drenching with weak tan liquor or water; second, after the liquor has been drained off, exposing the tan bark to the action of steam; third, a second percolation with weak tan liquor or water; fourth, a second treatment with steam; and, as this second treatment of steam, like the first, was only to soften the soluble parts contained in the bark, so as more readily to give up their tannin, this involved, fifth, another percolation of weak tan liquor or water.

He then goes on to describe the apparatus with which he executes his process, which "consists of an ordinary leach tub," "which may be divided into more or less compart-